Affirmed and Memorandum Opinion filed November 8, 2005









Affirmed
and Memorandum Opinion filed November 8, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00212-CR

NO.
14-04-00213-CR

____________

 

VICTOR ALFONSO
GUERRERO,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
Criminal District Court

Harris County, Texas

Trial Court Cause Nos. 928,445
& 930,908

 



 

M E M O R A N D U M  O P I N I O N

Appellant, Victor Alfonso Guerroro,
appeals his jury conviction of two separate counts of aggravated assault with a
deadly weapon.  A jury sentenced
appellant to twenty years= confinement for each count.  In his sole point of error, appellant argues
the trial court erred in overruling his motion to suppress written statements
admitted during the punishment phase of trial. 
We affirm.








Appellant filed a motion to suppress three
written statements made to Houston police officers contending they were
inadmissible because he did not knowingly, intelligently, and voluntarily waive
his Miranda rights.[1]  Specifically, appellant argues he was unable
to waive these rights with full awareness of the nature and consequences of the
waiver because he cannot read and write English, and he could not determine for
himself the content of his statements before signing.

Houston police officers approached appellant while he was
held on these charges at the Harris County Jail, intending to speak with him
about three unsolved crimes.  The
officers read appellant his Miranda rights, determined he understood
those rights, and obtained permission to speak with him about three unsolved
cases.  Unable to take a written statement
at that time, two officers returned the next day.  Appellant was again read his Miranda rights.  Appellant indicated he understood these
rights and agreed to talk with the officers. 
He then made three separate statements about crimes for which no charges
were pending.  One officer typed a
summary of each of appellant=s statements.  Appellant spoke with the officers in English
and had no difficulty understanding their questions or communicating with them.[2]  He told the officers that he could not read
and write English very well.  The
interviewing officer, therefore, included the following at the end of each
statement, before the signature line:

I have completed 9
years of school[[3]]
and can not read and write the English language.  My statement was read to me by Officer Young
and it is true and correct to the best of my knowledge.  I have given this statement to Officer
D.  E. 
Young of my own free will.








In total, appellant was admonished of his
rights seven times that dayCat the outset of
the interview, before each statement was typed by the interviewing officer, and
again when appellant signed each statement before a notary.[4]  As noted above, the rights read to and
initialed by appellant on each statement are those set out in Article 38.22 of
the Texas Code of Criminal Procedure. 
Each statement was read to appellant before he initialed corrections and
signed them.[5]  At no time did appellant invoke his rights or
indicate he would be more comfortable speaking 
in Spanish.  During his interview,
which lasted from approximately 12:30 p.m. until 3:00 p.m., appellant never
indicated he did not understand what was being said.  Following a hearing on appellant=s motion to
suppress these statements, the trial court found appellant received and
understood his rights and that he freely and voluntarily waived his
rights.  Relying upon testimony from
officers present at the interview, a tape recording and transcript of appellant
speaking in English with a homicide investigator and magistrate judge, and
competency and sanity examinations describing appellant as bilingual, the court
found there was no communication problem between appellant and the
officers.  The court then ruled that each
statement was freely and voluntarily given as a matter of law and fact, and
subsequently allowed the statements into evidence at the punishment phase of
trial.

Appellant contends his statements were not
knowingly, intelligently, and voluntarily given because he cannot read and
write English, and, therefore, the trial court erred in allowing his statements
into evidence at the punishment phase of trial.[6]  Appellant argues his illiteracy rendered him
unable to fully understand the nature and consequences of his waiver, or to
allow him to determine for himself the content of his statements before
signing.








We review a trial court=s ruling on a
motion to suppress evidence for an abuse of discretion.  State v. 
Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  When reviewing the trial court=s ruling on a
motion to suppress evidence, we will not engage in our own factual review;
rather, we determine whether the trial court=s findings are
supported by the record.  Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App.1990); Caddell v. State, 123 S.W.3d
722, 725 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  If the trial court=s findings are
supported by the record, we are not at liberty to disturb them.  Hill v. State, 902 S.W.2d 57, 59 (Tex.
App.CHouston [1st
Dist.] 1995, pet. ref=d); Green v. State, 892 S.W.2d 220,
221B22 (Tex. App.CTexarkana 1995,
pet. ref=d).  At a suppression hearing, the trial court is
the exclusive trier of fact and judge of witness credibility and the weight to
be given to testimony.  Ballard,
987 S.W.2d at 891; Villarreal v. 
State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  Therefore, when an evaluation of witness
credibility and demeanor is involved in determining historical facts or mixed
questions of law and fact, we give almost total deference to the trial court=s findings and
rulings.  Guzman v.  State, 955 S.W.2d 85, 88B89 (Tex. Crim.
App. 1997); Mason v.  State, 116
S.W.3d 248, 256 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d).[7]  In determining whether the trial court=s ruling on a
motion to suppress is supported by the record, we consider only the evidence
adduced at the suppression hearing.  Rachal
v.  State, 917 S.W.2d 799, 809 (Tex.
Crim. App. 1996).  








The statement of an accused may be used in
evidence if it was freely and voluntarily made, without compulsion or
persuasion.  Tex.  Code Crim.  Proc.  Ann.  Art. 
38.21 (Vernon 2005).  No statement
is admissible if, before making the statement, an accused did not receive or
knowingly, intelligently, and voluntarily waive his statutory rights.  See id. at Art. 38.22 ' 2.  Although Article 38.22 requires an accused
receive warnings additional to those set out by Miranda, the waiver of
Article 38.22 warnings is analyzed in the same way as the waiver of Miranda
rights.  Franks v.  State, 90 S.W.3d 771, 784B85  (Tex. App.CFort Worth 2002,
no pet.).  Waiver must be the product of
a free and deliberate choice rather than intimidation, coercion or deception;
it must also be made with full awareness of the nature of the rights abandoned
and the consequences of the decision to abandon them.  Ripkowski v.  State, 61 S.W.3d 378, 384 (Tex. Crim.
App. 2001); Franks, 90 S.W.3d at 785. 
In determining voluntariness, we look to the totality of circumstances
surrounding a statement=s acquisition.  Penry v. State, 903 S.W.2d 715, 744
(Tex. Crim. App. 1995); Griffin v. 
State, 765 S.W.2d 422, 429 (Tex. Crim. App. 1989).  

Appellant does not argueCnor does the
record contain any evidenceCthat his
statements were obtained by threats or coercion.  The record does not contain any evidence that
the written statement appellant signed was in any way inconsistent with what
was read and represented to him to be the contents of the statement he was
signing.  He contends instead that
because he could not read the rights he signed he was not fully aware of the
nature of those rights or of the consequences of his waiver.  Although appellant attended only special
education classes while in school, he has never asserted that he suffers from
any mental impairment severe enough to render him incapable of understanding
the meaning and effect of the statements as read to him.  Here, the trial court found appellant was
read his rights on several occasions, and he fully understood those rights as
they were explained to him.  These
findings are amply supported by the record.








Appellant also argues he was unable to
determine the content of his statements for himself before signing.  However, the Court of Criminal Appeals has
repeatedly held that written confessions given by defendants who are unable to
read may, nevertheless, be voluntary.  See
Penry, 903 S.W.2d at 746 (holding appellant voluntarily waived statutory
rights and evidence of illiteracy doe not, alone, make confession
inadmissible); Pete v.  State, 501
S.W.2d 683, 686 (Tex. Crim. App. 1973) (finding confession admissible despite
appellant=s illiteracy when record showed officers
read confession to defendant before he signed it); see Casias v.  State, 452 S.W.2d 483, 488 (Tex. Crim.
App. 1970) (stating Texas Code of Criminal Procedure Article 38.22 does not
require literacy before a statement may be admissible); Martinez v. State,
131 S.W.3d 22, 35 (Tex. App.CSan Antonio 2003,
no pet.) (explaining A[t]he mere fact that appellant is
uneducated and illiterate does not mean that he does not understand the nature
of the rights he is waiving and cannot voluntarily give a confession@ (quoting
Peacock v. State, 819 S.W.2d 233, 235 (Tex. App.CAustin 1991, no
pet.)).  A person=s inability to
read the statement prepared by law enforcement is only one amongst a totality
of circumstances to be considered when determining whether it was voluntarily
made.  Here, the trial court found the
police officers read each of appellant=s statements aloud
before he signed.  Therefore, appellant=s contention that
his illiteracy affected his knowledge of the statements= contents lends no
support to his argument that his statements were not knowingly, intelligently,
and voluntarily given.  We defer to the
trial court=s decision in this matter, which is
supported by the record.

The record supports the trial court=s ruling that
appellant=s statements were made in accordance with
Texas Code of Criminal Procedure Article 38.22. 
We find no abuse of discretion in denying appellant=s motion to
suppress his written statements. 
Accordingly, we affirm the trial court=s ruling.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

Judgment
rendered and Memorandum Opinion filed November 8, 2005.

Panel
consists of Justices Hudson, Frost, and Seymore.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  We refer to
the rights read to and waived by appellant as his AMiranda@ rights,
even though he was advised of his rights under a Texas statute which requires
warnings additional to those set out by the United States Supreme Court in Miranda.  See Tex.
Code Crim. Proc. Ann. Art. 38.22 (Vernon 2005); Miranda v. Arizona,
384 U.S. 436, 444B45 (1966).





[2]  Although
appellant used an interpreter at trial, the record is replete with evidence
appellant is fluent in English, and appellant does not argue on appeal that he
cannot speak or understand English.





[3]  Appellant
dropped out of school in the ninth grade without completing it.  While in school, he attended only special
education classes.





[4]  The bulk of
the interview was conducted by two Houston police officers.  After the statements were printed, however, a
third officer (who was a notary) was present as the statements were read to
appellant and he signed the same.





[5]  Appellant made
written corrections of typographical errors on two of the statements.  He made one correction when an officer read
his statement aloud (changing Acase@ to Acasa,@ the Spanish word for house).  The other change was made only after the
officer discovered the mistake, pointed it out to appellant, and asked if he
wanted to make a correction (changing Aby@ to Abuy@).





[6]  In his motion
to suppress, appellant also argues the statements were coerced and enticed from him
and that he was deprived of his right to counsel without making a knowing
waiver of that right. As these issues are
not raised in appellant=s brief, we do not address them here.





[7]  Appellant suggests this Court may
apply de novo review where issues involve the application of law upon
facts not turning on credibility and demeanor. 
See Guzman, 955 S.W.2d at 87B89 (holding that after affording deference to the trial
court=s determination of historical
facts, the appellate court conducts a de novo review of legal
issues).  The trial court, however, did
not rule based solely upon a transcript or other historical facts.  The motion to suppress hearing included live
testimony from officers present at appellant=s interview as well as testimony from appellant about his
understanding of what he signed.  The
trial court was in a better position than we are to judge the credibility of
these witnesses.  See id., at 87
(explaining when it is important to evaluate witness demeanor there are
compelling reasons to allow trial courts to apply the law to the facts).  Accordingly, we apply a deferential standard
of review.