**Dissenting Opinion issued February 10, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00712-CV

———————————

## IN THE MATTER OF J.J., Appellant

---

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-03598J**

---

## DISSENTING OPINION

The majority concludes that "[t]he manifestation of probable cause, combined with other circumstances, would lead a reasonable child to believe he was not free to terminate the interview and leave." Because I believe that a reasonable 14-year-old under the same circumstances would not believe that his freedom of movement was restrained to the degree associated with a formal arrest, I respectfully dissent.

*See Jeffley v. State*, 38 S.W.3d 847, 855 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

In reaching its holding, the majority relies on three factors: (1) that the setting was not "neutral," (2) that the environment was "dominated by police," and (3) that appellant's decision to answer questions "was not a genuine choice." These factors are, in fact, based on a single conclusion—that questioning a child at school, particularly a disciplinary-alternative-education school, is inherently coercive because "[p]olice chose a location where [the child] could not voluntarily leave without consequences." I believe that the majority's analysis places too much emphasis on the fact that the child was questioned by police *at school* rather than considering whether he was *restrained*. *See id.* (considering whether reasonable child of same age would believe that their "freedom of movement had been significantly restricted to the extent associated with a formal arrest").

In *Martinez v. State*, the 15-year-old defendant, after being informed by police officers that he could drive himself or be transported to the police station, agreed to accompany the officers to the station. 131 S.W.3d 22, 33 (Tex. App.—San Antonio 2003, no pet.). The defendant's mother accompanied her son to the police station, where they were placed in separate rooms. *Id.* A detective told the defendant that "no matter what he said, he would not be arrested that day." *Id.* The defendant acknowledged that he was told that he would be brought home after the interview.

*Id.* The defendant was never handcuffed. *Id.* After being told that another witness had provided a statement, the defendant agreed to tell the detective what he knew. *Id.*

After giving his statement, the defendant left the interview room, rejoined his mother, and they were taken home by police. *Id.* An arrest warrant was issued, and the defendant was arrested the next day. *Id.* The court concluded that "[t]he fact that [the defendant] acted upon the invitation of the police and was never threatened to be forcibly taken indicates that his movement was not restrained to the degree associated with a formal arrest." *Id.*

In the case of *In re J.W.*, a police officer working at a high school football game received information from a witness that the defendant had the witness's camera case. 198 S.W.3d 327, 329 (Tex. App.—Dallas 2006, no pet.). The officer located the juvenile defendant in the stands and asked about the camera case on his belt. *Id.* at 329. The juvenile said that he got it during the game from a "guy named Mike." *Id.* The officer confiscated the camera, and, the following week, after matching the serial number from the confiscated camera to the camera stolen from the witness, the defendant was arrested. *Id.* In a motion to suppress, the defendant complained that he was in custody when questioned by the officer at the football game. *Id.* at 330. The court of appeals concluded that, even though the defendant was confronted by two uniformed officers with guns and questioned, he was not in

3

custody. *Id.* at 331. The court noted that "he was not arrested, handcuffed, or restrained in any way . . [h]e was not placed in a patrol car or taken to the police station for questioning . . [h]e never asked to go home or asked for his mother or an attorney[;] [r]ather, he answered [the officer's] questions and turned over the camera." *Id.* Thus, the court concluded that "a reasonable sixteen-year-old in [the defendant's] circumstances would have felt able to end the questioning, particularly since the officers did nothing to restrain or restrict [the defendant's] movement." *Id.*

Like the defendants in *Martinez* and *J.W.*, I believe that, under the circumstances presented in this case, the trial court did not err by concluding that a reasonable 14-year-old child would not have believed his freedom of movement was restrained to the degree associated with a formal arrest. Appellant was never restrained or handcuffed. The door to the room in which appellant was question was unlocked. Appellant was nearest the door, and his access to the door was not restricted.[1] The officers told appellant "*if you want to* sit and talk to us that would be great." (Emphasis added). Such language indicated that appellant could choose whether he wanted to sit and talk or not. Appellant was told that he was not under

---

[1]    Although appellant testified that Officer Roscoe was blocking the door, Roscoe testified otherwise.  The trial court, as the factfinder, we entitled to believe Rosco and to disbelieve appellant. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

arrest,[2] there was no warrant for his arrest, and that he would return to his classroom after the interview.  The interview lasted only 18 minutes, after which appellant was allowed, as promised, to return to class. Appellant never asked to speak to his mother[3] or an attorney, nor did he indicate that he did not wish to talk to the officers. In fact, appellant questioned the officers about what the other witnesses had said about the shooting.

When the circumstances show, as here, that a person is acting upon the invitation, urging, or request of police officers without any threat or coercion by the officers, that person is acting voluntarily and is not in custody. *See, e.g., Nickerson v. State*, 312 S.W.3d 250, 256 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Turner v. State*, 252 S.W.3d 571, 580 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *see also Delacerda v. State*, 425 S.W.3d 367, 386–88 (Tex. App.—Houston

---

[2]    Although appellant claimed that Sergeant Holbrook, outside the presence of Officer Roscoe, told appellant that he had to talk to the officers or he could be arrested, Detective Roscoe testified that the officers specifically told appellant that he was not under arrest and would be returning to class. The recorded statement support's Roscoe's testimony, and the trial court, as factfinder, was entitled to believe Roscoe and disbelieve appellant *See Valtierra*, 310 S.W.3d at 447.

[3]    Although appellant testified that he asked to speak to his mother three times, all outside the presence of Officer Roscoe, Roscoe testified that he and Sergeant Holbrook were never separated, and appellant never asked to speak to his mother. Again, we afford almost total deference to the factfinder's resolution of this credibility issue.  *See State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (quoting *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997)) ("[A]ppellate courts . . . should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's findings are based on an evaluation of credibility and demeanor.").

[1st Dist.] 2011, pet. ref'd) (noting that defendant voluntarily went with officers into police station, to homicide division office, for questioning and that merely being questioned at stationhouse, by itself, does not constitute custody); *see also Estrada v. State*, 313 S.W.3d 274, 295 (Tex. Crim. App. 2010) (holding defendant not in custody when told he could leave, and did, without being arrested); *Gonzales v. State*, 4 S.W.3d 406, 415–16 (Tex. App.—Waco 1999, no pet.) (holding defendant not in custody, noting that defendant was released after questioning).

In short, appellant's freedom of movement was not restrained to the degree associated with a formal arrest. *See Delacerda*, 425 S.W.3d at 386–88; *Nickerson*, 312 S.W.3d at 256. Thus, he was not in custody. Under these circumstances, the trial court did not err in denying appellant's motion to suppress.

Because the majority holds otherwise, I dissent.

Sherry Radack
Chief Justice

The en banc court consists of Chief Justice Radack and Justices Kelly, Goodman, Landau, Hightower, Countiss, Rivas-Molloy, Guerra, and Farris.

A majority of the justices of this Court voted in favor of reconsidering the case en banc.

Radack, J., dissenting from the grant of en banc reconsideration and from the en banc opinion, joined by Farris, J.

Publish. TEX. R. APP. P. 47.2(b).

6