

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

### NO. 2-07-268-CR

---

JULIS EDWARD PERALES                                          APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury found Appellant Julis Edward Perales guilty of capital murder, and the trial court assessed his punishment at life imprisonment. In five points, Perales contends that the trial court erred by admitting a video recording of his confession into evidence and by failing to appoint two attorneys to assist him and that he received ineffective assistance of counsel. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

One night Perales and two other individuals—Darryl Quinones and Jared Birmingham—decided to rob a convenience store. While Quinones kept lookout in the getaway car, the other two men entered the store. As Perales attempted to steal a large television in the store, Birmingham approached the cashier, held a loaded gun to his head, and shot and killed him. At trial, the State presented the store's surveillance videotape showing the robbery and shooting, a video of Perales's confession to the police, and the testimony of Quinones and other witnesses. Perales did not call any witnesses. The jury returned a verdict finding Perales guilty of capital murder, and the trial court sentenced him to life imprisonment. Perales now appeals.

## III. ADMISSION OF PERALES'S VIDEOTAPED CONFESSION

In his first point, Perales contends that the trial court erred by denying his motion to suppress a video of his confession because the confession was involuntarily given in violation of the United States and Texas constitutions and Texas statutory law. *See* U.S. Const. amends. V, VI, XIV; Tex. Const. art. 1, § 10; Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). Perales grounds this point on two contentions: (1) he was too young and inexperienced to intelligently waive his rights, and (2) his confession was induced by promises

2

of benefits that he would receive if he confessed and by lies that the investigating detective told him during the interrogation.

Although Perales claims that admission of the video violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, section 10 of the Texas Constitution, he does not separately brief each issue. Therefore, in our resolution of this point, we will treat the state and federal constitutions as providing the same protections. *See Heitman v. State*, 815 S.W.2d 681, 690–91 n. 23 (Tex. Crim. App. 1991).

### A. The Videotaped Interrogation

We have reviewed the video and the transcript of the video admitted at trial. The video reveals that Detective Dishko, the investigating detective, read Perales his rights—as set forth in the code of criminal procedure article 38.22, section 2(a)[2]—within the first minutes of the interrogation. He asked Perales if he understood his rights, and Perales indicated that he did. Perales then signed a form to further verify that he understood his rights. The following exchange then occurred:

> Dishko:     Knowing your rights, do you want to talk to me about what's going on?
>
> Perales:    Nah, I'm asking you what's—what is going on?

---

[2] Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a).

3

Dishko:     Well, I need to know if you're willing to talk to me before we start talking.

Perales:    Ah, yeah.

Dishko:     Okay. So you—you do want—at least want to start talking to me?

Perales:    I mean, I just want to see what the situation is. Yeah.

Dishko:     Okay. In law enforcement, we gotta be very formal about things sometimes . . . . One of your rights is you have the right to terminate the interview at anytime.

Perales:    Yeah.

Dishko:     Okay. I want you to remember that. So you do want to start talking to me?

Perales:    Yeah.

Dishko:     Find out what's going on[] and if you want to stop, you understand you can stop?

Perales:    (shaking head up and down)

The detective told Perales that he was "implicated in a murder." When Perales asked what "implicated" meant, the detective explained that it meant that Perales's name had been "brought into the investigation" and that evidence showed that Perales was "part of this situation."

Detective Dishko proceeded to interrogate Perales for approximately forty minutes. During that time, Detective Dishko told Perales, "You don't have to talk to me if you don't want to," and "You make your own decisions. Okay?

4

Do you want to talk to me?" Perales reassured the detective that he wanted to talk.

During the interrogation, Detective Dishko told several lies, as he candidly admitted during the suppression hearing. Although Detective Dishko knew that Perales could not receive the death penalty because of his age (he was seventeen at the time of the offense), he told Perales that he possibly could receive the death penalty. At the suppression hearing, Detective Dishko admitted that he had lied about the use of the death penalty and explained that he had done so because he "wanted to plant that seed in [Perales's] head" to encourage Perales to cooperate.

Detective Dishko told Perales during the interrogation, "How was it an accident? I want you to explain it to me so I—convince me. 'Cause if you want me to believe that Julis, I've got to convince a jury." At the suppression hearing, Detective Dishko admitted that this was also inaccurate. The detective also told Perales, "It would benefit you to speak to me about your involvement because I know that [Birmingham] was the one that pulled that trigger." At the suppression hearing and at trial, Detective Dishko maintained that he never promised Perales anything in return for Perales's statements. Detective Dishko testified in front of the jury:

5

Q. Did you ever make [Perales] any kind of promise or say, if you tell me X, Y, and Z, I'll give you A, B, and C?

A. No, I did not promise him anything.

Q. Did you ever threaten him or coerce him into giving a statement?

A. No, ma'am.

At the end of the suppression hearing, the trial court concluded that Perales's statements were the result of a custodial interrogation, that Perales received the statutorily required warnings, and that "under subsection 2B [Perales] waived those rights and proceeded to answer the officer's questions."[3]

## B. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App.

---

[3] In his brief to this court, Perales contends that the trial court never made a specific finding that his statements were voluntary. We note, however, that by finding that subsection 2(b)—which requires that an accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived his rights—was satisfied, the trial court impliedly found that Perales voluntarily made the statements.

1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we

7

determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### C. Determining the Voluntariness of a Confession

An accused must give his confession voluntarily before it can be used against him. Tex. Code Crim. Proc. Ann. art. 38.22 § 2(2)(b); *see Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App.), *cert. denied*, 516 U.S. 977 (1995). Under federal due process principles, a statement is involuntary if the defendant was offered inducements of such a nature or coerced to such a degree that the inducements or coercion—not his own free will—produced the statement. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 521–22 (1986); *Gomes v. State*, 9 S.W.3d 373, 377 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Article 38.22 of the Texas Code of Criminal Procedure

provides that a defendant's recorded verbal confession to a crime cannot be used against him unless he first receives a series of statements regarding his rights and knowingly, intelligently, and voluntarily waives those rights. Tex. Code Crim. Proc. Ann. art. 38.22 § 2(a)(1)–(2). In determining the question of voluntariness, a court should consider the totality of circumstances under which the statement was obtained. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). The ultimate issue is whether the appellant's will was overborne. *Id.*

Once the accused contests the admission of his statement on the ground of "voluntariness," the due process guarantee and article 38.22, section 6 require the trial court to hold a hearing on the admissibility of the statement outside the presence of the jury. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (citing *Jackson v. Denno*, 378 U.S. 368, 380, 84 S. Ct. 1774, 1783 (1964)); *see also* Tex. Code Crim. Proc. Ann. art. 38.22, § 6. At this hearing, the State must prove voluntariness by a preponderance of the evidence. *Alvarado*, 912 S.W.2d at 211.

In determining whether the suspect's will was overborne, courts look at circumstances such as the length of the detention, denying family access to the suspect, and refusing the suspect's request to telephone family or an attorney, along with the suspect's age, experience, intelligence, and mental and physical

9

condition. *Oursbourn v. State*, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008); *Bell v. State*, 169 S.W.3d 384, 391 (Tex. App.—Fort Worth 2005, pet. ref'd). Youth is usually not enough, by itself, to render a statement inadmissible; it is merely a factor to consider in determining the voluntariness of the confession. *See Oursbourn*, 259 S.W.3d at 173. Furthermore, a suspect could be uneducated and illiterate and yet still understand the nature of the rights he is waiving and voluntarily give a confession. *Peacock v. State*, 819 S.W.2d 233, 235 (Tex. App.—Austin 1991, no pet.); *Martinez v. State*, 131 S.W.3d 22, 35 (Tex. App.—San Antonio 2003, no pet.).

Apart from youth and education level, a confession may be involuntary if it was induced by the promise of some benefit to the defendant. *See Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004). To render the confession involuntary, such promise must be (1) positive, (2) made or sanctioned by a person in authority, and (3) of such an influential nature that it would cause a defendant to speak untruthfully. *Id.* In contrast to these impermissible promises, trickery or deception can be used in obtaining a confession unless the trickery or deception was calculated to produce an untruthful confession or was offensive to due process. *Creager*, 952 S.W.2d at 856.

### D. The Voluntariness of Perales's Confession

Although Perales claims that his confession was not voluntary because he was seventeen years old at the time and only had a ninth grade education, he points to no evidence that his will was actually overborne because of his youth or intelligence level, nor do we find any in our review of the record. The total length of time between Perales's arrest at his house and the end of the interrogation was less than two hours. Perales was never denied access to family or legal counsel or denied access to the restroom, food, or water. Perales's young age or low intelligence, standing alone, does not render his statements inadmissable as involuntary. *See Oursbourn*, 259 S.W.3d at 173; *see also Martinez*, 131 S.W.3d at 35 (holding that the confession of a fifteen-year-old boy with the reading, spelling, and math abilities of a second or third grader was voluntary); *In re V.M.D.*, 974 S.W.2d 332, 346 (Tex. App.—San Antonio 1998, pet. denied) (holding that the confession of a twelve-year-old girl was voluntary); *Peacock*, 819 S.W.2d at 235 (holding that the trial court did not abuse its discretion by finding the confession of an uneducated and illiterate man voluntary). Additionally, our review of the record demonstrates no evidence of coercion or threats made by the detective. *See Bell*, 169 S.W.3d at 391.

Perales argues that the detective's statement that it would benefit Perales to speak to him was like a promise for a benefit upon his confession. Perales seems to argue that because shortly after making this statement, the detective said that Perales could receive the death penalty, the overall assertion was that Perales would not receive the death penalty if he confessed. This very attenuated reasoning, requiring us to piece together different parts of what the detective said at different times during the interrogation, is a far cry from the affirmative promise for a benefit disallowed by case law. *See Creager*, 952 S.W.2d at 856; *see also Bonham v. State*, 680 S.W.2d 815, 821 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 865 (1985) (holding that a police officer's statement to a defendant that if he did not give a statement, the officer would make sure that he received the death penalty was not an affirmative promise).

Contrary to Perales's assertions, we have been unable to find in the video or transcript of the video any affirmative promise made by the detective to Perales in exchange for his confession. *See Bonham*, 680 S.W.2d at 820. Regarding the detective's other false statements of which Perales complains to this court, Perales never presented any evidence that Detective Dishko purposefully made any false statements in an effort to produce an untruthful confession or otherwise offended due process. *See Creager*, 952 S.W.2d at 856.

Viewing the evidence in the light most favorable to the trial court's ruling, we cannot say that the trial court committed an abuse of discretion. *See Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818. Having considered all of the above factors together with all other circumstances, we hold that the trial court did not abuse its discretion by concluding that the State proved by a preponderance of the evidence that Perales's statements were voluntary. *See Creager*, 952 S.W.2d at 855; *Bell*, 169 S.W.3d at 391. Accordingly, we overrule Perales's first point.

### IV. EDITORIAL STATEMENTS OF INTERROGATING DETECTIVE

In his second point, Perales complains that the trial court violated rules of evidence 402 and 403 by allowing the jury to view certain portions of the videotaped interrogation in which the detective made "editorial comments" about the crime and punishment. Perales argues that these statements were irrelevant and highly prejudicial.

### A. The Relevant Portions of the Video

Toward the end of the interrogation of Perales, the following exchange took place:

> Dishko: I hope you change your attitude for court. 'Cause sitting there acting disgusted isn't gonna help you any in court. You need to show remorse and act like you are—are sorry that this man died for a . . . TV. He died because of a TV. He lost his life for a . . . TV.

13

Perales:     So you think I don't care?

Dishko:     You're acting like you don't.

Perales:     Hmm, just 'cause my feelings don't get expressed don't mean I care [sic].

. . . .

Dishko:     If you don't express your feelings. If you don't express say what you mean, people don't understand that. You're not acting like you're scared to go to jail. You're not acting like you're scared about what's going on. You're not acting like you could spend the rest of your life in prison.

Perales:     (unintelligible)

Dishko:     That you could be put to death for this.

Perales:     You want me to sit here and cry?

Dishko:     No, I want you to sit here and at least [say] you're sorry—if you are.

. . . .

Dishko:     You know what. I talked to the victim's family. You don't have to. You didn't have to tell those people that—that he got killed for a TV. I did. I had to watch his sister ball . . . . For what? . . . For a TV. That's cool with me, Julis. If you wanna act hard, that's—that's your decision.

In response to such statements, Perales asked what kind of evidence the police had against him. After Detective Dishko listed the evidence, Perales said that he participated in the robbery in the hopes of stealing the TV and selling

14

it so that he could buy Christmas presents for his family. The detective noted how it was "cold blooded" to kill someone who was not resisting and who could not identify Perales and Birmingham as the robbers because they were wearing masks.

Later in the interrogation, Perales demonstrated how he saw Birmingham (the shooter) point the gun at the victim and detailed how he saw the victim slump over after Birmingham pulled the trigger. The detective asked Perales what he thought his punishment should be, to which Perales responded that he did not want the death penalty. Not long after that, the detective concluded the interrogation. At trial and on appeal, Perales contends that the portions of the video in which Detective Dishko discussed the nature of the act and Perales's reaction to it were irrelevant and more prejudicial than probative.

### B. Standard of Review

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm its decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court's decision must be reasonable in view of all the relevant facts.

15

*Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

## C. Rules 401 and 403

Evidence is relevant when it has a tendency to make the existence of any fact more probable or less probable than it would have been without the evidence. Tex. R. Evid. 401. Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App.), *cert. denied*, 127 S. Ct. 664 (2006). The trial court is in a superior position to gauge the impact of relevant evidence in evaluating its determination under rule 403. *See Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

## D. Admission of Detective's Statements was Harmless

Even if we assume that the trial court erred by overruling Perales's objections to Detective Dishko's statements, the admission of those statements was harmless. Texas Rule of Appellate Procedure 44.2(b) provides that a nonconstitutional error "that does not affect substantial rights must be

16

disregarded." Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref'd.). In making this determination, we review the record as a whole. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Here, the jury watched the videotaped interrogation at trial. The statements at issue occurred near the end of the interrogation, and the jury had already witnessed Perales's conduct during the interrogation and his confession to Detective Dishko. The jury also witnessed Perales at trial and could draw their own conclusions about whether Perales appeared remorseful. The detective's statements added little, if any, weight to the State's case. Thus, in the context of the entire case against Perales, any error in admitting the detective's statements did not have a substantial or injurious effect on the jury's verdict and did not affect Perales's substantial rights. *See King*, 953 S.W.2d at 271. Accordingly, we overrule Perales's second point.

### V. Ineffective Assistance of Counsel

In his third and fourth points, Perales contends that he received ineffective assistance of counsel. Specifically, Perales posits that he received

17

ineffective assistance when his trial attorney (1) failed to raise hearsay and Confrontation Clause objections to those statements made by Detective Dishko at the end of the interrogation that we detailed in section IV above and (2) failed to object to the prosecutor's characterization of the offense as "capital murder."

## A. Determining Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the

reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a

19

probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

### B.  Failure to Object to Admission of Detective Dishko's Statements on Hearsay and Confrontation Clause Grounds

We will first address Perales's contention that he received ineffective assistance of counsel when his trial attorney failed to raise hearsay and Confrontation Clause objections to Detective Dishko's comments detailed in section IV above.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d).  The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  Even when hearsay offered against a defendant is admissible under evidentiary rules, that evidence may implicate the Confrontation Clause of the Sixth Amendment if the defendant is not afforded the opportunity to confront the out-of-court declarant. *Gonzalez v. State,* 195 S.W.3d 114, 116 (Tex. Crim. App.), *cert. denied*, 127 S. Ct. 564 (2006).

As we held in section IV above, any error in the admission of the statements at issue—that the detective hoped Perales changed his attitude for court, that Perales needed to show remorse, that Perales "could be put to death for this," that Perales's accomplice acted in a "cold blooded" manner, and that Perales was "acting hard" about the murder—was harmless. *See* Tex. R. App. Proc. 44.2(b); *King*, 953 S.W.2d at 271. Consequently, Perales's trial counsel did not ineffectively represent Perales by failing to object to such statements on hearsay grounds. *See* Tex. R. Evid. 801(d); *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

Furthermore, there was no Confrontation Clause objection to be made because the detective testified at trial—giving Perales a chance to confront him and eliminating any potential Confrontation Clause claim. *See* U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 1369 n.9 (2004). Consequently, Perales's trial counsel was not ineffective by failing to object to the admission of the detective's statements on Confrontation Clause grounds. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Because Perales's counsel was not deficient, we overrule Perales's third point. *See id.*

21

**C. Failure to Object to Characterization of Act as a "Capital Murder"**

In his fourth point, Perales contends that he received ineffective assistance of counsel because his trial attorney failed to object to the prosecutor's characterization of the act as a capital murder.

During the prosecutor's direct examination of Detective Dishko, she asked the detective, "And then at some point later in the tape, do you see the men *who commit the capital murder* of Shekhar Regmi on the tape?" [Emphasis added.] The detective responded, "Yes, you do." Later, the following exchange took place:

| | |
|---|---|
| [Prosecutor:] | The video [of the robbery] starts with Darryl Quinones and goes through. But the PowerPoint just starts when the two people who rob and kill Mr. Regmi come in; is that right? |
| [Dishko:] | Yes, it is. |
| [Defense Counsel]: | Well, objection to [the prosecutor] characterizing this as — that's invading the province of the jury with him answering that question about who is killing whom on this question, Judge. That's a jury question. |

The trial court sustained the objection, instructed the jury to disregard the question and answer, and denied Perales's motion for a mistrial. At that point, Perales's counsel said,

22

Along that vein, Judge, I waived that objection, earlier, and I'm raising ineffective assistance of counsel on myself at this point because [the prosecutor] asked Detective Dishko, is this tape going to show Mr. Perales and Mr. Birmingham committing capital murder, I waived that error. And since I didn't object timely, I'm raising ineffective assistance of counsel based on my misperformance . . . and ask for a ruling on that.

The trial court responded, "Based on your totality of representation thus far, that objection is overruled."

Even assuming that the first prong of *Strickland* is satisfied based on defense counsel's concession that he inadvertently failed to object to the prosecutor's statement, Perales failed to demonstrate that the failure made the jury's verdict unreliable. *See Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. Given the volume of evidence against him, including the testimony of Quinones and Perales's own videotaped confession, and the isolated nature of this one failure to object, we cannot say that a single instance of failing to object to a comment by the prosecutor characterizing the act as a capital murder constituted ineffective assistance of counsel. *See id.*; *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) ("An isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel."). Accordingly, we overrule Perales's third and fourth points.

23

## VI. FAILURE TO TIMELY APPOINT TWO ATTORNEYS FOR PERALES

In his fifth point, Perales complains that the trial court erred by failing to timely appoint a second attorney to defend him. The State asserts that Perales failed to preserve this complaint for appeal and, alternatively, that any error is harmless. We agree.

The trial court appointed defense counsel for Perales in January of 2006. A grand jury indicted Perales for capital murder one week later. On March 16, 2007—fourteen months after the indictment, the trial court appointed a second attorney to represent Perales. The court's order denoted the reason for appointing a second attorney: "[Perales] charged with Capital Murder. Second counsel required for assistance." The State filed written notice of waiver of the death penalty on June 15, 2007—one month before trial. Both appointed attorneys represented Perales at trial.

Article 26.052(e) of the Texas Code of Criminal procedure provides:

The presiding judge of the district court in which a capital felony case is filed shall appoint two attorneys, at least one of whom must be qualified under this chapter, to represent an indigent defendant *as soon as practicable after charges are filed*, unless the state gives notice in writing that the state will not seek the death penalty.

Tex. Code Crim. Proc. Ann. art. 26.052(e) (Vernon Supp. 2008) (emphasis added). Failure to comply with article 26.052 is susceptible to a harmless error

24

analysis under rule of appellate procedure 44.2(b). *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App.), *cert. denied*, 531 U.S. 980 (2000); *Kirk v. State*, 199 S.W.3d 467, 473 (Tex. App.—Fort Worth 2006, pet. ref'd).

During the fourteen months between Perales's indictment and the trial court's appointment of a second defense attorney, Perales did not object to the trial court's failure to appoint a second attorney for him. Consequently, he did not preserve this point for appellate review. *See* Tex. R. App. P. 33.1(a)(1); *Wright v. State*, 28 S.W.3d 526, 530 (Tex. Crim. App. 2000), *cert. denied*, 531 U.S. 1128, 121 S. Ct. 885 (2001); *Toluao v. State*, No. 02-04-00040-CR, 2005 WL 1994179, at * 2 (Tex. App.—Fort Worth Aug. 18, 2005, pet. ref'd) (mem. op., not designated for publication). We will, however, address his complaint in the interest of justice.

Although Perales was represented by only one attorney for fourteen months after his indictment—during which time the State had not yet waived the death penalty, Perales cannot show that the error affected his substantial rights. *See* Tex. R. App. P. 44.2(b); *Hughes*, 24 S.W.3d at 838; *Kirk*, 199 S.W.3d at 473. As we have explained in detail above, Perales does not establish any specific instances of misconduct or ineffective assistance of counsel committed by his attorney. *See Wright*, 28 S.W.3d at 530; *Kirk*, 199

S.W.3d at 473.  Additionally, the State waived the death penalty before trial.

Accordingly, we overrule Perales's fifth point.

## VII.  CONCLUSION

Having overruled all of Perales's five points, we affirm the trial court's judgment.


SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 9, 2008