COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-268-CR

 

JULIS
EDWARD PERALES                                                     APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                
STATE



 

                                                  ------------

 

             FROM THE 396TH
DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------       

 

                                             I.  INTRODUCTION

A jury found Appellant Julis Edward Perales
guilty of capital murder, and the trial court assessed his punishment at life
imprisonment.  In five points, Perales
contends that the trial court erred by admitting a video recording of his
confession into evidence and by failing to appoint two attorneys to assist him
and that he received ineffective assistance of counsel.  We will affirm.

 








                            II.  FACTUAL AND PROCEDURAL BACKGROUND

One night Perales and two other individualsCDarryl
Quinones and Jared BirminghamCdecided
to rob a convenience store.  While
Quinones kept lookout in the getaway car, the other two men entered the
store.  As Perales attempted to steal a
large television in the store, Birmingham approached the cashier, held a loaded
gun to his head, and shot and killed him. 
At trial, the State presented the store=s
surveillance videotape showing the robbery and shooting, a video of Perales=s
confession to the police, and the testimony of Quinones and other
witnesses.  Perales did not call any
witnesses.  The jury returned a verdict
finding Perales guilty of capital murder, and the trial court sentenced him to
life imprisonment.  Perales now appeals.

                      III.  ADMISSION OF PERALES=S VIDEOTAPED CONFESSION








In his first point, Perales contends that the
trial court erred by denying his motion to suppress a video of his confession
because the confession was involuntarily given in violation of the United
States and Texas constitutions and Texas statutory law.  See U.S. Const. amends. V, VI, XIV;
Tex. Const. art. 1, '  10; Tex. Code Crim. Proc.
Ann. art. 38.22 (Vernon 2005).  Perales
grounds this point on two contentions: (1) he was too young and inexperienced
to intelligently waive his rights, and (2) his confession was induced by
promises of benefits that he would receive if he confessed and by lies that the
investigating detective told him during the interrogation.

Although Perales claims that admission of the
video violates the Fifth, Sixth, and Fourteenth Amendments to the United States
Constitution, and Article I, section 10 of the Texas Constitution, he does not
separately brief each issue.  Therefore,
in our resolution of this point, we will treat the state and federal
constitutions as providing the same protections.  See Heitman v. State, 815 S.W.2d 681,
690B91 n. 23
(Tex. Crim. App. 1991).

                                 A.  The Videotaped Interrogation

We have reviewed the video and the transcript of
the video admitted at trial.  The video
reveals that Detective Dishko, the investigating detective, read Perales his
rightsCas set
forth in the code of criminal procedure article 38.22, section 2(a)[2]Cwithin
the first minutes of the interrogation. 
He asked Perales if he understood his rights, and Perales indicated that
he did.  Perales then signed a form to
further verify that he understood his rights. 
The following exchange then occurred:

Dishko:       Knowing
your rights, do you want to talk to me about what=s going on?

 

Perales:       Nah,
I=m asking you what=sCwhat is going on?








Dishko:       Well,
I need to know if you=re willing to talk to me
before we start talking.

 

Perales:       Ah,
yeah.

 

Dishko:       Okay.  So youCyou do wantCat least want to start talking to me?

 

Perales:       I
mean, I just want to see what the situation is. 
Yeah.

 

Dishko:       Okay.  In law enforcement, we gotta be very formal
about things sometimes . . . . One of your rights is you have the right to
terminate the interview at anytime.

 

Perales:       Yeah.

 

Dishko:       Okay.  I want you to remember that.  So you do want to start talking to me?

 

Perales:       Yeah.

 

Dishko:       Find
out what=s going on[] and if you
want to stop, you understand you can stop?

 

Perales:       (shaking
head up and down) 

 

The detective told Perales that he was Aimplicated
in a murder.@ 
When Perales asked what Aimplicated@ meant,
the detective explained that it meant that Perales=s name
had been Abrought into the investigation@ and
that evidence showed that Perales was Apart of
this situation.@ 









Detective Dishko proceeded to interrogate Perales
for approximately forty minutes.  During
that time, Detective Dishko told Perales, AYou don=t have
to talk to me if you don=t want to,@ and AYou make
your own decisions.  Okay?  Do you want to talk to me?@  Perales reassured the detective that he
wanted to talk.

During the interrogation, Detective Dishko told
several lies, as he candidly admitted during the suppression hearing.  Although Detective Dishko knew that Perales
could not receive the death penalty because of his age (he was seventeen at the
time of the offense), he told Perales that he possibly could receive the death
penalty.  At the suppression hearing,
Detective Dishko admitted that he had lied about the use of the death penalty
and explained that he had done so because he Awanted
to plant that seed in [Perales=s] head@ to
encourage Perales to cooperate.

Detective Dishko told Perales during the
interrogation, AHow was it an accident?  I want you to explain it to me so ICconvince
me.  >Cause if
you want me to believe that Julis, I=ve got
to convince a jury.@ 
At the suppression hearing, Detective Dishko admitted that this was also
inaccurate.  The detective also told
Perales, AIt would benefit you to speak to
me about your involvement because I know that [Birmingham] was the one that
pulled that trigger.@ 
At the suppression hearing and at trial, Detective Dishko maintained
that he never promised Perales anything in return for Perales=s
statements.  Detective Dishko testified
in front of the jury:








Q.     Did
you ever make [Perales] any kind of promise or say, if you tell me X, Y, and Z,
I=ll give you A, B, and C?

 

A.     No, I
did not promise him anything.

 

Q.     Did
you ever threaten him or coerce him into giving a statement?

 

A.     No,
ma=am.

 

At
the end of the suppression hearing, the trial court concluded that Perales=s statements were the
result of a custodial interrogation, that Perales received the statutorily
required warnings, and that Aunder subsection 2B [Perales] waived those rights
and proceeded to answer the officer=s questions.@[3] 

                                        B.  Standard of Review

 








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.








Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s
ruling, supports those fact findings.  Kelly,
204 S.W.3d at 818B19.  We then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.

We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004).

                     C.  Determining the Voluntariness of a Confession








An accused must give his confession voluntarily
before it can be used against him.  Tex.
Code Crim. Proc. Ann. art. 38.22 '
2(2)(b); see Penry v. State, 903 S.W.2d 715, 744 (Tex. Crim. App.), cert.
denied, 516 U.S. 977 (1995).  Under
federal due process principles, a statement is involuntary if the defendant was
offered inducements of such a nature or coerced to such a degree that the
inducements or coercionCnot his own free willCproduced
the statement.  Colorado v. Connelly,
479 U.S. 157, 167, 107 S. Ct. 515, 521B22
(1986); Gomes v. State, 9 S.W.3d 373, 377 (Tex. App.CHouston
[14th Dist.] 1999, pet. ref=d).  Article 38.22 of the Texas Code of Criminal
Procedure provides that a defendant=s
recorded verbal confession to a crime cannot be used against him unless he
first receives a series of statements regarding his rights and knowingly,
intelligently, and voluntarily waives those rights.  Tex. Code Crim. Proc. Ann. art. 38.22 ' 2(a)(1)B(2).  In determining the question of voluntariness,
a court should consider the totality of circumstances under which the statement
was obtained.  Creager v. State,
952 S.W.2d 852, 856 (Tex. Crim. App. 1997). 
The ultimate issue is whether the appellant=s will
was overborne.  Id.

Once the accused contests the admission of his
statement on the ground of Avoluntariness,@ the due
process guarantee and article 38.22, section 6 require the trial court to hold
a hearing on the admissibility of the statement outside the presence of the
jury.  Alvarado v. State, 912
S.W.2d 199, 211 (Tex. Crim. App. 1995) (citing Jackson v. Denno, 378
U.S. 368, 380, 84 S. Ct. 1774, 1783 (1964)); see also Tex. Code Crim.
Proc. Ann. art. 38.22, ' 6.  At this hearing, the State must prove
voluntariness by a preponderance of the evidence.  Alvarado, 912 S.W.2d at 211.








In determining whether the suspect=s will
was overborne, courts look at circumstances such as the length of the
detention, denying family access to the suspect, and refusing the suspect=s
request to telephone family or an attorney, along with the suspect=s age,
experience, intelligence, and mental and physical condition.  Oursbourn v. State, 259 S.W.3d 159,
173 (Tex. Crim. App. 2008); Bell v. State, 169 S.W.3d 384, 391 (Tex.
App.CFort
Worth 2005, pet. ref=d).  Youth is usually not enough, by itself, to
render a statement inadmissible; it is merely a factor to consider in determining
the voluntariness of the confession.  See
Oursbourn, 259 S.W.3d at 173. 
Furthermore, a suspect could be uneducated and illiterate and yet still
understand the nature of the rights he is waiving and voluntarily give a
confession.  Peacock v. State, 819
S.W.2d 233, 235 (Tex. App.CAustin
1991, no pet.); Martinez v. State, 131 S.W.3d 22, 35 (Tex. App.CSan
Antonio 2003, no pet.).

Apart from youth and education level, a
confession may be involuntary if it was induced by the promise of some benefit
to the defendant.  See Martinez
v. State, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004).  To render the confession involuntary, such
promise must be (1) positive, (2) made or sanctioned by a person in authority,
and (3) of such an influential nature that it would cause a defendant to speak
untruthfully.  Id.  In contrast to these impermissible promises,
trickery or deception can be used in obtaining a confession unless the trickery
or deception was calculated to produce an untruthful confession or was
offensive to due process.  Creager,
952 S.W.2d at 856.








                        D.  The Voluntariness of Perales=s
Confession

Although Perales claims that his confession was
not voluntary because he was seventeen years old at the time and only had a
ninth grade education, he points to no evidence that his will was actually
overborne because of his youth or intelligence level, nor do we find any in our
review of the record.  The total length
of time between Perales=s arrest at his house and the
end of the interrogation was less than two hours.  Perales was never denied access to family or
legal counsel or denied access to the restroom, food, or water.  Perales=s young
age or low intelligence, standing alone, does not render his statements
inadmissable as involuntary.  See
Oursbourn, 259 S.W.3d at 173; see also Martinez, 131 S.W.3d
at 35 (holding that the confession of a fifteen-year-old boy with the reading,
spelling, and math abilities of a second or third grader was voluntary); In
re V.M.D., 974 S.W.2d 332, 346 (Tex. App.CSan
Antonio 1998, pet. denied) (holding that the confession of a twelve-year-old
girl was voluntary); Peacock, 819 S.W.2d at 235 (holding that the trial
court did not abuse its discretion by finding the confession of an uneducated
and illiterate man voluntary). 
Additionally, our review of the record demonstrates no evidence of
coercion or threats made by the detective. 
See Bell, 169 S.W.3d at 391.








Perales argues that the detective=s
statement that it would benefit Perales to speak to him was like a promise for
a benefit upon his confession.  Perales
seems to argue that because shortly after making this statement, the detective
said that Perales could receive the death penalty, the overall assertion was
that Perales would not receive the death penalty if he confessed.  This very attenuated reasoning, requiring us
to piece together different parts of what the detective said at different times
during the interrogation, is a far cry from the affirmative promise for a
benefit disallowed by case law.  See
Creager, 952 S.W.2d at 856; see also Bonham v. State, 680 S.W.2d
815, 821 (Tex. Crim. App. 1984), cert. denied, 474 U.S. 865 (1985)
(holding that a police officer=s
statement to a defendant that if he did not give a statement, the officer would
make sure that he received the death penalty was not an affirmative
promise).           Contrary to Perales=s
assertions, we have been unable to find in the video or transcript of the video
any affirmative promise made by the detective to Perales in exchange for his
confession.  See Bonham, 680
S.W.2d at 820.  Regarding the detective=s other
false statements of which Perales complains to this court, Perales never
presented any evidence that Detective Dishko purposefully made any false
statements in an effort to produce an untruthful confession or otherwise
offended due process.  See Creager,
952 S.W.2d at 856. 








Viewing the evidence in the light most favorable
to the trial court=s ruling, we cannot say that the
trial court committed an abuse of discretion. 
See Wiede, 214 S.W.3d at 24; Kelly, 204 S.W.3d at
818.  Having considered all of the above
factors together with all other circumstances, we hold that the trial court did
not abuse its discretion by concluding that the State proved by a preponderance
of the evidence that Perales=s
statements were voluntary.  See
Creager, 952 S.W.2d at 855; Bell, 169 S.W.3d at 391.  Accordingly, we overrule Perales=s first
point.

                    IV.  EDITORIAL STATEMENTS
OF INTERROGATING DETECTIVE

In his second point, Perales complains that the
trial court violated rules of evidence 402 and 403 by allowing the jury to view
certain portions of the videotaped interrogation in which the detective made Aeditorial
comments@ about
the crime and punishment.  Perales argues
that these statements were irrelevant and highly prejudicial.  

A.  The
Relevant Portions of the Video

Toward the end of the interrogation of Perales,
the following exchange took place:

Dishko:       I
hope you change your attitude for court. 
>Cause sitting there
acting disgusted isn=t gonna help you any in
court.  You need to show remorse and act
like you areCare sorry that this man
died for a . . . TV.  He died because of
a TV.  He lost his life for a . . . TV. 








Perales:       So
you think I don=t care?

 

Dishko:       You=re acting like you don=t.

 

Perales:       Hmm,
just >cause my feelings don=t get expressed don=t mean I care [sic].

 

. . .
.

 

Dishko:       If
you don=t express your
feelings.  If you don=t express say what you
mean, people don=t understand that.  You=re not acting like you=re scared to go to
jail.  You=re not acting like you=re scared about what=s going on.  You=re not acting like you could spend the rest of
your life in prison.

 

Perales:       (unintelligible)

 

Dishko:       That
you could be put to death for this.

 

Perales:       You
want me to sit here and cry?

 

Dishko:       No,
I want you to sit here and at least [say] you=re sorryCif you are.

 

. . . .

 

Dishko:       You
know what.  I talked to the victim=s family.  You don=t have to. 
You didn=t have to tell those
people thatCthat he got killed for a
TV.  I did. I had to watch his sister
ball . . . .  For what? . . . For a
TV.  That=s cool with me,
Julis.  If you wanna act hard, that=sCthat=s your decision.  

 








In response to such statements, Perales asked
what kind of evidence the police had against him.  After Detective Dishko listed the evidence,
Perales said that he participated in the robbery in the hopes of stealing the
TV and selling it so that he could buy Christmas presents for his family.  The detective noted how it was Acold
blooded@ to kill
someone who was not resisting and who could not identify Perales and Birmingham
as the robbers because they were wearing masks.

Later in the interrogation, Perales demonstrated
how he saw Birmingham (the shooter) point the gun at the victim and detailed
how he saw the victim slump over after Birmingham pulled the trigger.  The detective asked Perales what he thought
his punishment should be, to which Perales responded that he did not want the
death penalty.  Not long after that, the
detective concluded the interrogation. 
At trial and on appeal, Perales contends that the portions of the video
in which Detective Dishko discussed the nature of the act and Perales=s
reaction to it were irrelevant and more prejudicial than probative.

                                        B.  Standard of Review








We review a trial court=s
decision to admit evidence under an abuse of discretion standard.  Green v. State, 934 S.W.2d 92, 101B02 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997); Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).  As long as the trial court=s ruling
falls within the zone of reasonable disagreement, we will affirm its
decision.  Moses v. State, 105
S.W.3d 622, 627 (Tex. Crim. App. 2003). 
The trial court=s decision must be reasonable in
view of all the relevant facts.  Santellan
v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  The mere fact that a trial court may decide a
matter within its discretionary authority in a different manner than an
appellate court would in a similar circumstance does

not demonstrate that an abuse of discretion has occurred.  Manning v. State, 114 S.W.3d 922, 926
(Tex. Crim. App. 2003).

                                        C.
Rules 401 and 403

Evidence is relevant when it has a tendency to
make the existence of any fact more probable or less probable than it would
have been without the evidence.  Tex. R.
Evid. 401.  Rule 403 allows for the
exclusion of otherwise relevant evidence when its probative value is
substantially outweighed by the danger of unfair prejudice.  Tex. R. Evid. 403;  Shuffield v. State, 189 S.W.3d 782,
787 (Tex. Crim. App.), cert. denied, 127 S. Ct. 664 (2006).  The trial court is in a superior position to
gauge the impact of relevant evidence in evaluating its determination under
rule 403.  See Mozon v. State, 991
S.W.2d 841, 847 (Tex. Crim. App. 1999).

                 D.  Admission of Detective=s
Statements was Harmless








Even if we assume that the trial court erred by
overruling Perales=s objections to Detective Dishko=s statements,
the admission of those statements was harmless. 
Texas Rule of Appellate Procedure 44.2(b) provides that a
nonconstitutional error Athat does not affect substantial
rights must be disregarded.@  Tex. R. App. P. 44.2(b).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall v. State,
961 S.W.2d 639, 643 (Tex. App.CFort
Worth 1998, pet. ref=d.).  In making this determination, we review the
record as a whole.  See Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Here, the jury watched the videotaped
interrogation at trial.  The statements
at issue occurred near the end of the interrogation, and the jury had already
witnessed Perales=s conduct during the
interrogation and his confession to Detective Dishko.  The jury also witnessed Perales at trial and
could draw their own conclusions about whether Perales appeared
remorseful.  The detective=s
statements added little, if any, weight to the State=s
case.  Thus, in the context of the entire
case against Perales, any error in admitting the detective=s
statements did not have a substantial or injurious effect on the jury=s verdict
and did not affect Perales=s
substantial rights.  See King, 953
S.W.2d at 271.  Accordingly, we overrule
Perales=s second
point.

                              V.  INEFFECTIVE ASSISTANCE
OF COUNSEL








In his third and fourth points, Perales contends
that he received ineffective assistance of counsel.  Specifically, Perales posits that he received
ineffective assistance when his trial attorney (1) failed to raise hearsay and
Confrontation Clause objections to those statements made by Detective Dishko at
the end of the interrogation that we detailed in section IV above and (2)
failed to object to the prosecutor=s
characterization of the offense as Acapital
murder.@

                     A.  Determining Ineffective Assistance of Counsel

To establish ineffective assistance of counsel,
the appellant must show by a preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734,
740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62B63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999).








In evaluating the effectiveness of counsel under
the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether
counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688B89, 104
S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813B14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).








The second prong of Strickland requires a
showing that counsel=s errors were so serious that
they deprived the defendant of a fair trial, i.e., a trial whose result is
reliable.  Strickland, 466 U.S. at
687, 104 S. Ct. at 2064.  In other words,
appellant must show there is a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Id. at 697, 104 S. Ct. at 2070.

      B.  Failure to Object to Admission of Detective
Dishko=s Statements on

                          Hearsay
and Confrontation Clause Grounds

We will first address Perales=s
contention that he received ineffective assistance of counsel when his trial
attorney failed to raise hearsay and Confrontation Clause objections to
Detective Dishko=s comments detailed in section
IV above.

Hearsay is a Astatement,
other than one made by the declarant while testifying at the trial or hearing,
offered in evidence to prove the truth of the matter asserted.@  Tex. R. Evid. 801(d).  The Confrontation Clause of the Sixth
Amendment provides: AIn all criminal prosecutions,
the accused shall enjoy the right . . . to be confronted with the witnesses
against him.@ 
U.S. Const. amend. VI.  Even when
hearsay offered against a defendant is admissible under evidentiary rules, that
evidence may implicate the Confrontation Clause of the Sixth Amendment if the
defendant is not afforded the opportunity to confront the out-of-court
declarant. Gonzalez v. State, 195 S.W.3d 114, 116 (Tex. Crim. App.), cert.
denied, 127 S. Ct. 564 (2006).








As we held in section IV above, any error in the
admission of the statements at issueCthat the
detective hoped Perales changed his attitude for court, that Perales needed to
show remorse, that Perales Acould be
put to death for this,@ that Perales=s
accomplice acted in a Acold blooded@ manner,
and that Perales was Aacting hard@ about
the murderCwas harmless.  See Tex. R. App. Proc. 44.2(b); King,
953 S.W.2d at 271.  Consequently, Perales=s trial
counsel did not ineffectively represent Perales by failing to object to such
statements on hearsay grounds.  See
Tex. R. Evid. 801(d); Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

Furthermore, there was no Confrontation Clause
objection to be made because the detective testified at trialCgiving
Perales a chance to confront him and eliminating any potential Confrontation
Clause claim.  See U.S. Const.
amend. VI; Crawford v. Washington, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354,
1369 n.9 (2004).  Consequently, Perales=s trial
counsel was not ineffective by failing to object to the admission of the
detective=s statements on Confrontation
Clause grounds.  See Strickland,
466 U.S. at 687, 104 S. Ct. at 2064. 
Because Perales=s counsel was not deficient, we
overrule Perales=s third point.  See id.








        C.  Failure to Object to Characterization of Act
as a ACapital Murder@

In his fourth point, Perales contends that he
received ineffective assistance of counsel because his trial attorney failed to
object to the prosecutor=s characterization of the act as
a capital murder.

During the prosecutor=s direct
examination of Detective Dishko, she asked the detective, AAnd then
at some point later in the tape, do you see the men who commit the capital
murder of Shekhar Regmi on the tape?@  [Emphasis added.]  The detective responded, AYes, you
do.@  Later, the following exchange took place:

[Prosecutor:]                 The
video [of the robbery] starts with Darryl Quinones and goes through.  But the PowerPoint just starts when the two
people who rob and kill Mr. Regmi come in; is that right?

 

[Dishko:]                      Yes,
it is.

 

[Defense
Counsel]:        Well, objection to [the
prosecutor] characterizing this as C that=s
invading the province of the jury with him answering that question about who is
killing whom on this question, Judge. 
That=s a jury question. 

The trial court sustained the objection, instructed the jury to
disregard the question and answer, and denied Perales=s motion
for a mistrial.  At that point, Perales=s
counsel said,








Along that vein, Judge, I waived that objection,
earlier, and I=m raising ineffective assistance
of counsel on myself at this point because [the prosecutor] asked Detective
Dishko, is this tape going to show Mr. Perales and Mr. Birmingham committing
capital murder, I waived that error.  And
since I didn=t object timely, I=m
raising ineffective assistance of counsel based on my misperformance . . . and
ask for a ruling on that. 

The trial court responded, ABased on
your totality of representation thus far, that objection is overruled.@

Even assuming that the first prong of Strickland
is satisfied based on defense counsel=s
concession that he inadvertently failed to object to the prosecutor=s
statement, Perales failed to demonstrate that the failure made the jury=s
verdict unreliable.  See Strickland, 466
U.S. at 687, 104 S. Ct. at 2064.  Given
the volume of evidence against him, including the testimony of Quinones and
Perales=s own
videotaped confession, and the isolated nature of this one failure to object,
we cannot say that a single instance of failing to object to a comment by the
prosecutor characterizing the act as a capital murder constituted ineffective
assistance of counsel.  See id.; Ingham
v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (AAn
isolated failure to object to certain procedural mistakes or improper evidence
does not constitute ineffective assistance of counsel.@).  Accordingly, we overrule Perales=s third
and fourth points.

 








                VI.  FAILURE TO TIMELY APPOINT TWO ATTORNEYS
FOR PERALES

In his fifth point, Perales complains that the
trial court erred by failing to timely appoint a second attorney to defend
him.  The State asserts that Perales
failed to preserve this complaint for appeal and, alternatively, that any error
is harmless.  We agree.

The trial court appointed defense counsel for
Perales in January of 2006.  A grand jury
indicted Perales for capital murder one week later.  On March 16, 2007Cfourteen
months after the indictment, the trial court appointed a second attorney to
represent Perales.  The court=s order
denoted the reason for appointing a second attorney: A[Perales]
charged with Capital Murder.  Second
counsel required for assistance.@  The State filed written notice of waiver of
the death penalty on June 15, 2007Cone
month before trial.  Both appointed
attorneys represented Perales at trial.

Article 26.052(e) of the Texas Code of Criminal
procedure provides:

The presiding judge of the district court in
which a capital felony case is filed shall appoint two attorneys, at least one
of whom must be qualified under this chapter, to represent an indigent
defendant as soon as practicable after charges are filed, unless the
state gives notice in writing that the state will not seek the death penalty.








Tex. Code Crim. Proc. Ann. art. 26.052(e) (Vernon Supp. 2008)
(emphasis added).  Failure to comply with
article 26.052 is susceptible to a harmless error analysis under rule of
appellate procedure 44.2(b).  Hughes
v. State, 24 S.W.3d 833, 838 (Tex. Crim. App.), cert. denied, 531
U.S. 980 (2000); Kirk v. State, 199 S.W.3d 467, 473 (Tex. App.CFort
Worth 2006, pet. ref=d).

During the fourteen months between Perales=s
indictment and the trial court=s
appointment of a second defense attorney, Perales did not object to the trial
court=s
failure to appoint a second attorney for him. 
Consequently, he did not preserve this point for appellate review.  See Tex. R. App. P. 33.1(a)(1); Wright
v. State, 28 S.W.3d 526, 530 (Tex. Crim. App. 2000), cert. denied,
531 U.S. 1128, 121 S. Ct. 885 (2001); Toluao v. State, No.
02-04-00040-CR, 2005 WL 1994179, at * 2 (Tex. App.CFort
Worth Aug. 18, 2005, pet. ref=d) (mem.
op., not designated for publication).  We
will, however, address his complaint in the interest of justice.








Although Perales was represented by only one
attorney for fourteen months after his indictmentCduring
which time the State had not yet waived the death penalty, Perales cannot show
that the error affected his substantial rights. 
See Tex. R. App. P. 44.2(b); Hughes, 24 S.W.3d at 838;
Kirk, 199 S.W.3d at 473.  As we have
explained in detail above, Perales does not establish any specific instances of
misconduct or ineffective assistance of counsel committed by his attorney.  See Wright, 28 S.W.3d at 530; Kirk,
199 S.W.3d at 473.  Additionally, the
State waived the death penalty before trial. 
Accordingly, we overrule Perales=s fifth
point.

                                             VII.  CONCLUSION

Having overruled all of Perales=s five
points, we affirm the trial court=s
judgment. 

 

SUE
WALKER

JUSTICE

 

PANEL: CAYCE, C.J.;
LIVINGSTON and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: October 9,
2008











[1]See Tex. R. App. P. 47.4.





[2]Tex. Code Crim. Proc.
Ann. art. 38.22, ' 2(a).





[3]In his brief to this
court, Perales contends that the trial court never made a specific finding that
his statements were voluntary.  We note,
however, that by finding that subsection 2(b)Cwhich requires that an
accused, prior to and during the making of the statement, knowingly,
intelligently, and voluntarily waived his rightsCwas satisfied, the trial
court impliedly found that Perales voluntarily made the statements.